UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
PETROHAWK ENERGY CORPORATION,           :
                        Plaintiff,      :
                                        :    06 Civ. 9404 (DLC)
            -v-                         :
                                        :    OPINION & ORDER
LAW DEBENTURE TRUST COMPANY OF NEW       :
YORK,                                   :
                        Defendant.      :
                                        :
----------------------------------------X

Appearances

For Plaintiff:
Joseph M. McLaughlin
George P. Choundas
William G. Ferullo
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

For Defendant:
Charles I. Poret
Glenn E. Siegel
Ross L. Hirsch
Joshua S. Krakowsky
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112

DENISE COTE, District Judge:

        In bringing this action, plaintiff Petrohawk Energy

Corporation ("Petrohawk") seeks the return of $1.2 million that

defendant Law Debenture Trust Company of New York ("Law

Debenture"), acting as indenture trustee for certain

noteholders, received from Petrohawk's paying agent, the Bank of

New York Trust Company, N.A. ("Bank of New York").  This lawsuit
follows on the heels of litigation between the parties in the
Delaware Court of Chancery, where Law Debenture has sued
Petrohawk and others over issues arising under an indenture.
Law Debenture intends to use the $1.2 million to fund its
Delaware action against Petrohawk.

   Law Debenture has filed a motion to dismiss this action for
lack of standing under Rule 12(b)(1), Fed. R. Civ. P., and for
failure to state a claim under Rule 12(b)(6).[1]  For the following
reasons, defendant's motion is granted.


<u>Background</u>

   The following facts are undisputed or taken from the
complaint.  Pursuant to an April 1, 2004 indenture (the
"Indenture"), KCS Energy, Inc. ("KCS") issued $275 million in
aggregate principal amount of 7.125% Senior Notes due 2012 (the
"Notes").  On July 12, 2006, KCS merged with and into Petrohawk,
and Petrohawk assumed KCS's rights and obligations relating to
the Notes and the Indenture.  The Indenture named U.S. Bank
National Association ("U.S. Bank") as Indenture Trustee and Bank
of New York as the "Paying Agent."  The Paying Agent's duties
included its obligation to "hold in trust for the benefit of

---

[1] Because the motion to dismiss is granted on the grounds
described herein, it is unnecessary to address Law Debenture's
alternative request for abstention.

Holders or the Trustee all money held by such Paying Agent for
the payment of principal, premium, if any, and interest (if
any)" on the Notes.

On August 24, 2006, Petrohawk received a letter from an
attorney at Dechert LLP, which is the law firm representing the
defendant, purporting to represent certain "institutions which
collectively hold in excess of fifty percent (50%) of the
outstanding principal amount" of the Notes.  The letter stated
that U.S. Bank was removed as Indenture Trustee, and defendant
Law Debenture was being appointed as successor Indenture Trustee
in its place.  Petrohawk advised Law Debenture by a September 1
letter that the purported removal of U.S. Bank was invalid and
ineffective on its face.  On September 14, Law Debenture
commenced an action in the Delaware Court of Chancery against
Petrohawk and certain present and former members of the board of
directors of Petrohawk and KCS, alleging that following the
merger, a "change of control" under the Indenture had occurred,
triggering the Noteholders' redemption rights, and claiming
breach of the Indenture and related causes of action.  Among
other things, the subject of the Delaware action includes the
question of whether Law Debenture is a validly appointed
Indenture Trustee.

On October 1, Petrohawk deposited with Bank of New York
approximately $9.8 million, in accordance with the Paying Agent

3

Agreement between Petrohawk and Bank of New York, for the sole and exclusive purpose that such funds be held in trust and disbursed to Noteholders in satisfaction of Petrohawk's semi-annual interest obligation.  Petrohawk was obligated to deposit "by 11:00 a.m. on or prior to the due date . . . a sum in same day funds sufficient to pay the principal of, premium, if any, or interest so becoming due," with such funds being "considered paid on the date due if on such date the Paying Agent holds in accordance with this Indenture money sufficient to pay."

In order to fund the Delaware litigation, Law Debenture obtained $1.2 million of the deposited funds from Bank of New York.  Law Debenture informed Petrohawk of this transfer through an October 6 letter.  Petrohawk complains that the Indenture "does not authorize the advancement of a seven-figure war chest for Defendant to conduct litigation against Petrohawk."

Petrohawk filed this complaint on October 13, 2006, seeking relief for conversion, tortious interference, and constructive trust.  Petrohawk seeks an order compelling Law Debenture to return the funds that were wrongfully appropriated, restitution and disgorgement of the funds, imposition of a constructive trust and/or equitable lien on the funds, damages for injury to business reputation, punitive damages, interest, and attorneys' fees and costs.  Law Debenture filed this motion to dismiss, claiming that Petrohawk lacks Article III standing under Rule

4

12(b)(1) and that it has failed to state a claim upon which relief may be granted, under Rule 12(b)(6).

## Discussion

Under the pleading standard set forth in Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." Leibowitz v. Cornell Univ., 445 F .3d 586, 591 (2d Cir. 2006). Article III standing is properly challenged through a motion to dismiss under Rule 12(b)(1). Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006). A district court must generally establish that the plaintiff has Article III standing first, before deciding a case on the merits, such as on a Rule 12(b)(6) motion to dismiss. See id. at 85 (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)).

A. Article III Standing

Law Debenture claims Petrohawk lacks Article III standing.[2]
Standing is challenged on the basis of the pleadings, and thus
the court accepts as true "all material allegations of the
complaint, and must construe the complaint in favor of the
complaining party." Bldg. & Constr. Trades Council v. Downtown
Dev., Inc., 448 F.3d 138, 144 (2d Cir. 2006). "Under Article
III of the Constitution, it is 'axiomatic' that a federal court
may not exercise jurisdiction over a dispute unless the
plaintiff shows 'that he personally has suffered some actual or
threatened injury as a result of the putatively illegal conduct
of the defendant.'" Jones v. Unum Life Ins. Co. of Am., 223
F.3d 130, 141 (2d Cir. 2000) (citing Blum v. Yaretsky, 457 U.S.
991, 999 (1982)). "To meet the Article III standing
requirement, a plaintiff must have suffered an 'injury in fact'
that is 'distinct and palpable'; the injury must be fairly
traceable to the challenged action; and the injury must be
likely redressable by a favorable decision." Denney v. Deutsche
Bank AG, 443 F.3d 253, 263 (2d Cir. 2006) (citing Lujan v.

---

[2] "Where, as here, jurisdiction is predicated on diversity of
citizenship, a plaintiff must have standing under both Article
III of the Constitution and applicable state law in order to
maintain a cause of action." Mid-Hudson Catskill Rural Migrant
Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir.
2005).  The requirements for standing under New York law,
however, are similar to the requirements under Article III,
including the requirement of an "injury in fact." See Caprer v.
Nussbaum, 825 N.Y.S.2d 55, 62-63 (App. Div. 2006).

Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  "An
injury-in-fact must be 'distinct and palpable,' as opposed to
'abstract,' and the harm must be 'actual or imminent,' not
'conjectural or hypothetical.'"  Id. at 264 (citing Whitmore v.
Arkansas, 495 U.S. 149, 155-56 (1990)).

     Petrohawk claims it has Article III standing because Law
Debenture diverted funds that Petrohawk had provided for the
benefit of its Noteholders.  According to Petrohawk, the
Noteholders retain their right to receive those funds, and
Petrohawk has an ongoing obligation to provide those funds.  The
injury-in-fact that Petrohawk identifies is its potential
liability to the Noteholders for the diverted funds.

     Petrohawk has a "financial stake in the funds because they
had a liability" to the Noteholders "in an amount equal" to the
diverted funds.  United States v. Cambio Exacto, S.A., 166 F.3d
522, 528 (2d Cir. 1999).  "Those liabilities exposed them to
substantial economic loss," which is "plainly the type of injury
for which parties may seek redress in federal court."  Id.
Petrohawk has pleaded that it suffered a distinct, actual, and
particularized injury when Law Debenture diverted funds
Petrohawk had supplied for the purpose of discharging
Petrohawk's payment obligation.

     Law Debenture argues that Petrohawk lacks Article III
standing because Petrohawk does not own the diverted funds and

does not have an ongoing obligation to the Noteholders for those funds.  Law Debenture's argument impermissibly "conflate[s] the threshold question of [Petrohawk's] standing under Article III . . . with the question of whether [Petrohawk] has a valid claim on the merits.  The two questions, however, are distinct."  Lerman v. Bd. of Elections, 232 F.3d 135, 143 n.9 (2d Cir. 2000).  "[A]n injury-in-fact need not be capable of sustaining a valid cause of action under applicable [] law."  Denney, 443 F.3d at 264.  Petrohawk's claim over the funds is precisely what is at dispute in this case, and determination of that question is a determination of the merits of this case.  Whether Petrohawk's injury-in-fact rises to the level of a valid cause of action for conversion, tortious interference, or constructive trust is a question better considered in the context of Law Debenture's motion to dismiss under Rule 12(b)(6) for failure to state a claim.

B. Failure to State a Claim

When considering a motion to dismiss under Rule 12(b)(6), a trial court "must accept as true all the factual allegations in the complaint and draw all reasonable inferences in plaintiffs' favor."  In re Tamoxifen Citrate Antitrust Litig., 466 F.3d 187, 200 (2d Cir. 2006) (citation omitted).  It may "dismiss a complaint only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the
allegations" set forth therein.  Swierkiewicz v. Sorema N.A.,
534 U.S. 506, 514 (2002) (citation omitted); see also Twombly v.
Bell Atl. Corp., 425 F.3d 99, 106 (2d Cir. 2005).  At the same
time, "conclusory allegations or legal conclusions masquerading
as factual conclusions will not suffice to defeat a motion to
dismiss."  Actman v. Kirby, McInerney & Squire, LLP, 464 F.3d
328, 337 (2d Cir. 2006).  Although the focus should be on the
pleadings, a court may also consider any written instrument
attached to the complaint as an exhibit, "or any statements or
documents incorporated in it by reference."  Rothman v. Gregor,
220 F.3d 81, 88 (2d Cir.2000) (citation omitted); see also
Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d
Cir. 1991).

     All parties have relied on New York law to defend their
claims in this diversity action.  The parties having consented
to the application of forum law, that consent is sufficient to
end the choice of law inquiry.  3Com Corp. v. Banco do Brasil,
S.A., 171 F.3d 739, 743 (2d Cir. 1999).


1. Conversion
     Petrohawk first brings a claim against Law Debenture for
conversion, claiming that Law Debenture was engaged in "an
unauthorized and wrongful exercise of dominion" over the $1.2

9

million which Petrohawk had "ownership, possession, and/or control of" through its agent, Bank of New York.  Law Debenture argues that Petrohawk does not, as a matter of law, have ownership, possession, or control of the Bank of New York funds.

Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (citation omitted).  An essential element of conversion is "legal ownership or an immediate superior right of possession to a specific identifiable thing" by the plaintiff. Castaldi v. 39 Winfield Assoc., 820 N.Y.S.2d 279, 279 (App. Div. 2006) (citation omitted).  The plaintiff must have "ownership, possession, or control."  Id. at 280.  When the determination of ownership turns on interpretation of provisions of an unambiguous contract, "the effect of those terms on ownership is strictly a question of law."  New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 111 (2d Cir. 2006).

The Indenture and the Paying Agent Agreement govern the status of the funds in this case.  Petrohawk was required, "on or prior to the due date of the principal of or premium, if any, or interest on any Securities," to deposit with Bank of New York, the Paying Agent, "a sum in same day funds sufficient" to pay the amount due.  Such amounts were "considered paid on the

date due if on such date the Paying Agent holds in accordance
with this Indenture money sufficient to pay" all amounts due.
The Paying Agent would hold the funds "in trust for the benefit
of Holders or the Trustee."  The right of a Noteholder to
receive payment for principal, premium, or interest, however,
"shall not be impaired or affected without the consent of such
Holder."  After payment of all obligations, the Trustee and the
Paying Agent were required to return to Petrohawk any excess
money upon request.

    The language of the Indenture dictates that the funds be
held "in trust."  Moreover, funds held by a trustee or paying
agent for the purpose of paying principal or interest to
noteholders "obtain the character of trust funds."  Am. Bar
Found., Commentaries on Indentures 318 (1986) [hereinafter "ABF
Commentaries"]; see also People v. City Bank of Rochester, 96
N.Y. 32, 36 (1884); Finn v. Dillon, 287 N.Y.S. 858, 860 (City
Ct. 1936).  Once the funds were deposited to be held in trust
for the purpose of paying the Noteholders, Petrohawk no longer
had control over the funds.  See, e.g., Steel Cities Chem. Co.
v. Va.-Carolina Chem. Co., 7 F.2d 280, 283 (2d Cir. 1925);
Rogers Locomotive & Mach. Works v. Kelley, 88 N.Y. 234, 238-39
(1882); Brown v. J.P. Morgan & Co., 40 N.Y.S.2d 229, 233 (App.
Div. 1943).  Even when there has been insufficient evidence of
the existence of a trust, courts have observed that where a

trust exists, depositors lose control over deposited funds.
See, e.g., In re Interborough Consol. Corp., 288 F. 334, 347 (2d
Cir. 1923); Ehag Eisenbahnwerte Holding Aktiengesellschaft v.
Banca Nationala A Romaniei, 117 N.E.2d 346, 350 (N.Y. 1954).

Petrohawk claims that the cases cited here are inapposite
because they arise in the context of attachment.  It is unclear
why the heightened standard of attachment should matter, where
the ultimate issue is the question of ownership.  What is
important is whether there was an unambiguous intention to
create a trust in the underlying Indenture.  See, e.g., In re
Nat'l Public Serv. Corp., 3 F. Supp. 262, 264 (S.D.N.Y. 1933);
Sinclair Cuba Oil Co., S.A. v. Menati Sugar Co., 2 F. Supp. 240,
241 (S.D.N.Y. 1932); see also 5A William F. Fratcher, Scott on
Trusts § 531.1, at 23, 25-26 [hereinafter "Scott on Trusts"].
The language of the Indenture shows a clear intent to place the
funds in a trust and have the funds applied to the specific
purpose of making interest payments to Noteholders.  Despite
Petrohawk's conclusory claims of ownership, once it deposited
the funds with Bank of New York, it relinquished control over
the funds and cannot claim ownership of the funds.

Petrohawk claims that despite the trust character of the
funds, it still has an interest in the deposited funds because
it continues to be obligated to the Noteholders for the interest
payment, for which the funds were originally intended.  For

support, Petrohawk points to Indenture Section 6.7, mandated by
Section 316(b) of the Trust Indenture Act of 1939, 15 U.S.C. §
77ppp(b), that provides that the "right of any Holder to receive
payment . . . shall not be impaired or affected without the
consent of such Holder."  The statutory provision, however, was
enacted to proscribe "so-called 'majority action clauses' in
indentures" by prohibiting "use of an indenture that permits
modification by majority securityholder vote of any core term of
the indenture," such as the holder's right to receive payment of
principal or interest.  UPIC & Co. v. Kinder-Care Learning
Ctrs., Inc., 793 F. Supp. 448, 452 (S.D.N.Y. 1992).  The rights
of Noteholders to bring an action to enforce payment generally,
as is guaranteed by Indenture Section 6.7, is irrelevant to the
specific circumstance here where the Noteholders' trustee is
alleged to have diverted the funds already paid by the company.

     Petrohawk also points to Section 8.4 of the Indenture,
which provides for return of unclaimed funds to Petrohawk, as
showing its ongoing interest.  Similar clauses returning
unexpended funds to the issuer, however, have been deemed
consistent with an intent to create a trust under the Indenture.
See, e.g., Steel Cities Chem., 7 F.2d at 282-83; Rogers
Locomotive, 88 N.Y. at 239.  The right to unclaimed funds does
not presently confer upon Petrohawk ownership of or control over
the funds at issue here.

The parties dispute whether deposit of funds to a paying agent or trustee discharges the obligations of an issuer, and there was much litigation during the Depression over this question.  ABF Commentaries 320-21; see also Scott on Trusts § 531.1.  Petrohawk points out that the Model Provisions of the ABF Commentaries has the issuer bear "the risk of failure of any of its depositaries."  ABF Commentaries 321.  Law Debenture counters that Section 4.1 of the Indenture -- which states that amounts "shall be considered paid" on the date the Paying Agent holds such amount -- is not found in the Model Provisions and establishes that when funds are deposited with the Paying Agent, the issuer is "considered to have honored its obligation . . . and those Securities cease to be outstanding."  Am. Bar Assoc., Revised Model Simplified Indenture, 55 Bus. Law. 1115, 1183-84 (2000).

If it were necessary to reach this issue, it is unlikely to assist Petrohawk given the formulation adopted in Section 4.1 of the Indenture.  But, the situation here is not remotely similar to that envisioned by this portion of the Model Provisions in the ABF Commentaries.  This is not a situation where a depositary has failed, and the Noteholders are seeking relief from the issuer.  In fact, this is a case where the purported trustee for the Noteholders themselves, with their consent, diverted funds held in trust for those Noteholders.  Should the

Noteholders ever seek to recover those diverted funds, the
action lies against the trustee, not Petrohawk.  Where the
Noteholders have no claim against Petrohawk, there is no
obligation by Petrohawk which can support an allegation of
"ownership, possession, or control" sufficient to state a claim
for conversion.

2. Tortious Interference

      Petrohawk also claims that Law Debenture tortiously
interfered with the Paying Agent Agreement between Petrohawk and
Bank of New York by intentionally inducing Bank of New York to
pay to Law Debenture the funds it held in trust for the
Noteholders.  Law Debenture argues that there can be no claim
for tortious interference because Petrohawk cannot identify any
injury.

      "To establish tortious interference, a plaintiff must show
(1) the existence of a valid contract between plaintiff and a
third party; (2) the defendant's knowledge of that contract; (3)
the defendant's intentional procuring of the breach, and (4)
damages."  White Plains Coat & Apron Co. v. Cintas Corp., 460
F.3d 281, 285 (2d Cir. 2006) (citation omitted).  The cause of
action for tortious interference of a contract does not arise
"until actual damages are sustained," and "nominal damages
associated with the underlying breach of contract will not stand

15

in the stead of actual damages." Kronos, Inc. v. AVX Corp., 612 N.E.2d 289, 294 (N.Y. 1993).

Petrohawk has not alleged any actual damages arising from the alleged tortious interference.  For the reasons stated in discussing Petrohawk's conversion claim, as a matter of law Petrohawk does not have ownership of the funds, nor does it have any continuing obligation to the Noteholders from paid funds. Bank of New York's alleged breach of the Paying Agent Agreement caused no injury to Petrohawk because it no longer had any control of the funds.  The Noteholders' relief lies with its purported trustee Law Debenture or potentially the Bank of New York, but not with Petrohawk.


3. Constructive Trust

Lastly, Petrohawk claims that a constructive trust should be imposed in favor of Petrohawk to prevent unjust enrichment by Law Debenture.  "New York law generally requires four elements for a constructive trust:  (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment."  In re First Cent. Fin. Corp., 377 F.3d 209, 212 (2d Cir. 2004) (citation omitted).  New York law, however, does "not insist that a constructive trust must fit within [this] framework."  Counihan v. Allstate Ins. Co., 194 F.3d 357,

16

362 (2d Cir. 1999).  While the factors serve as "important
guideposts," the constructive trust doctrine is equitable in
nature and should not be "rigidly limited."  Id. (citation
omitted).  Of the four factors, "[t]he fourth element is the
most important since the purpose of the constructive trust is
prevention of unjust enrichment."  In re First Cent. Fin., 377
F.3d at 212 (citation omitted).  A cause of action for unjust
enrichment requires a claim that "(1) the defendant was
enriched, (2) at the expense of the plaintiff, and (3) that it
would be inequitable to permit the defendant to retain that
which is claimed by the plaintiff."  Clifford R. Gray, Inc. v.
LeChase Constr. Servs., LLC, 819 N.Y.S.2d 182, 187 (App. Div.
2006).  "[T]he existence of a written agreement," however,
"precludes a finding of unjust enrichment."  In re First Cent.
Fin., 377 F.3d at 213.

     As Law Debenture points out, and Petrohawk does not
dispute, Petrohawk has pleaded none of the first three elements
of a constructive trust claim.  In addition, Petrohawk cannot
assert the fourth element for unjust enrichment either, because
the element requires the defendant's enrichment to be at the
expense of the plaintiff.  As discussed above in considering
Petrohawk's conversion and tortious interference claims,
Petrohawk has no ownership interest or other ongoing obligation
with regard to the diverted funds.  Where the funds are no

longer connected to Petrohawk, Law Debenture's acquisition of
those funds cannot be said to have been at the expense of
Petrohawk.  Equally important, there are valid contracts
governing the relationship between Petrohawk and Law Debenture -
- the Indenture and the Paying Agent Agreement -- which together
cover all of the transactions between Petrohawk, Law Debenture,
Bank of New York, and the Noteholders.

Petrohawk cites to In re Estate of Cohen, 629 N.E.2d 1356
(N.Y. 1994), and Markwica v. Davis, 472 N.Y.S.2d 510 (App. Div.
1984), to argue that constructive trusts have been imposed even
where a contract governs the subject matter.  Such cases,
however, involving "willful breaches of family obligations
arising from matrimonial relationships" (such as the mutual
wills in In re Estate of Cohen) or "separation agreements and
divorce decrees" (such as the separation agreement naming life
insurance beneficiaries in Markwica) are distinguishable.  In re
First Cent. Fin., 377 F.3d at 215.  In this complex commercial
dispute between sophisticated financial entities, a constructive
trust does not lie.


Conclusion

Defendant's motion to dismiss for failure to state a claim
is granted, and the complaint is dismissed.  The Clerk of Court

18

is directed to enter judgment for the defendant and to close the case.

     SO ORDERED:

Dated:     New York, New York
             January 29, 2007

                          DENISE COTE
                 United States District Judge